## Chesapeake & O. Ry. Co. v. Boyd.

(Decided Oct. 9, 1934.)

BROWNING & DAVIS and COMBS & COMBS for appellant.

W. A. DAUGHERTY for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

Some time after dark on the night of December 21, 1931, a horse which Tosh Boyd was riding was struck and killed by an engine attached to a passenger train of the Chesapeake & Ohio Railway Company and the rider sustained, a number of bruises and injuries. The accident occurred at a point about 2,000 feet south of Harold station in Floyd county.

In an action for damages for personal injuries sustained and for the loss of his horse, Boyd has recovered judgment against the railway company for $1,250, and it is appealing.

628

Appellant's tracks run parallel with and along the west side of the Big Sandy river at and near Harold station. The Mayo trail, a state highway, parallels the river on the opposite side. There is a public road leading from the state highway over a bridge across the river and crossing the railroad tracks 25 or 30 feet south of the station. There is another road known as the River Ford road leading from this road south and between the railroad tracks and the river. It is about 120 feet from the east end of the bridge over the river to the railroad crossing. There is a pumphouse on the River Ford road something over 600 feet from the road crossing the railroad tracks.

Appellee testified that in the afternoon of December 21 he went to the home of his brother on the east side of the river, where he remained until very late in the afternoon. While on his way home a rain came up and he took shelter in a barn, where he remained for some time, and that he did not reach the bridge across the river until after dark. As he crossed the bridge he saw a south-bound passenger train approaching the station and, knowing that when it stopped to take on passengers it would block the crossing, he stopped his horse at the east end of the bridge; that his horse was not afraid of trains but was afraid of automobiles; that after he stopped an automobile came up behind him and his horse became restive so he proceeded on toward the crossing. Fearing the automobile would come up too near behind him, he went up into the River Ford road; that the noise of the engine in starting so frightened his horse that it became uncontrollable and ran away with him going onto the tracks somewhere near the pumphouse and running along and on the tracks until struck by the engine. Appellee charged in his petition that in starting the train, appellant's agents and servants "negligently and carelessly caused and permitted the engine of said train, and in their charge to emit fire and unusual noise and discharge therefrom large and unusual quantities of steam" at which plaintiff's horse became frightened, etc., that the horse ran along the tracks in front while the engine and train and appellant's "agents, servants and employees negligently and carelessly caused the said train to strike plaintiff's said horse," etc.

The court instructed only on the issue as to the alleged unusual and unnecessary noise made by the

engine, and counsel for appellee offered instructions which only submitted this issue.

As taken from the transcript of the evidence, appellee testifying in chief concerning the noise made by the engine when the train started stated:

"Q. Can you describe the noise the train made when it began pulling out? A. A lot of steam was shooting out.

"Q. Any hissing noise or sounds about it? A. Seems like there was.

"Q. Are you acquainted with trains yourself? A. Nothing only the noises.

"Q. Did you ever work on them know anything about an engine of that kind? A. No sir.

"Q. You have seen them stop and start before? A. Yes sir.

"Q. How often? A. Pretty often there worked close to them.

"Q. Can you describe the noise that train of that kind made there with reference to unusual noises of trains? A. I though it was making an unusual noise.

"By the court: Describe it.

"By Defendant: I move to exclude the answer.

"By the Court: This is a conclusion, describe it. The jury will not consider that.

"A. More puffing the bell ringing, puffing pretty fast.

"Q. Any steam escaping at the same time from it? A. Yes sir.

"Q. Did the escaping of that steam make any noise? A. Yes sir it was making a big noise coming out the side.

"Q. What was the character of that noise? A. The steam started the train from the Station. When it started out commenced coming out."

The engineer and fireman in charge of the engine and others testified that there was no unusual noise in starting the train. They further testified that they did not see appellee or his horse any time that night and had no knowledge of the accident until they arrived at

630

Pikeville 12 or 15 miles from Harold station, when it was discovered that appellee together with his saddle had been carried there on the pilot or "cow catcher" of the engine.

The evidence of other witnesses indicates that shortly before the accident occurred, appellee was intoxicated, and that he did not approach the railway from the bridge over the Big Sandy, but came down a hill from the house of one Mr. Smith west of the railroad and rode onto an old coal track running parallel with and west of the main track. The horse's tracks were followed back from where the accident occurred to the end of the old coal track, a distance of about 1,000 feet, but the conclusion we have reached renders it unnecessary to go into or discuss this evidence.

It is a matter of common knowledge that the starting of an engine attached to a train necessarily is attended with considerable noise. The evidence for appellant indicates that there was no unusual or unnecessary noise made in starting this train, and an examination of appellee's evidence clearly fails to establish that there was.

It therefore follows that the proof wholly fails to sustain appellee's cause of action and the court erred in overruling appellant's motion for a peremptory instruction in its favor. This conclusion renders it unnecessary to discuss any other question raised.

Judgment reversed, and cause remanded for a new trial and proceedings consistent with this opinion.